ACADEMY OF MEDICINE OF CINCINNATI et al., Appellees,

v.

AETNA HEALTH, INC. et al., Appellants; Humana Health Plan of Ohio, Inc.▮

[Cite as *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 155 Ohio App.3d 310, 2003-Ohio-6194.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–030109, C–030110 and C–030111.

Decided Nov. 21, 2003.

Strauss & Troy, Richard S. Wayne and Joseph J. Braun; Barrett & Weber, L.P.A., and Michael R. Barrett; Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Terrence L. Goodman and Jean M. Geoppinger, for appellees.

Hahn Loeser & Parks, L.L.P., and Robert J. Fogarty, for appellant Aetna Health, Inc.

Frost Brown Todd, L.L.C., and James R. Adams, for appellant Community Insurance Company, d.b.a. Anthem Blue Cross & Blue Shield.

Thompson Hine and Stephen J. Butler, for appellant United Healthcare of Ohio, Inc.

---

Per Curiam.

{¶ 1} Plaintiffs-appellees, medical doctors practicing in the greater Cincinnati, Ohio area and two nonprofit medical societies representing the doctors, sued defendants-appellants [1] Aetna Health, Inc. ("Aetna"), Anthem Blue Cross & Blue Shield ("Anthem"), and United Healthcare of Ohio, Inc. ("United"), three managed health-care organizations ("the HMOs"), for violations of the antitrust provisions in Ohio's Valentine Act, R.C. Chapter 1331. The doctors alleged that the HMOs had conspired to fix and lower the insurance reimbursement rates paid to hospitals and medical practitioners in the geographic region consisting of the following counties in Ohio: Hamilton, Clermont, Warren, and Butler. In response to the complaint, each HMO moved to stay the proceedings in the trial court and to compel arbitration of the antitrust claims. The trial court denied the motions, stating that the dispute (conspiracy to engage in price fixing) did not arise out of or relate to the provider agreements between the parties and that the "parties [had] never agreed to arbitrate claims that were independent of any breach of contract." Each HMO has timely appealed that decision.[2] We have consolidated the appeals for purposes of this decision.

{¶ 2} Aetna, Anthem, and United each assign as error the trial court's denial of their motions to compel arbitration and to stay proceedings in the trial court. Prior to discussing these assignments of error, we note that all the parties agree that a valid arbitration clause existed in each of the HMOs' contracts with the

---

1.  Defendant Humana Health Plan of Ohio, Inc. ("Humana") originally filed a notice of appeal and an appellate brief in connection with this case. Because Humana voluntarily dismissed its appeal after oral arguments were held, we do not address its assignments of error.

2.  Pursuant to R.C. 2711.02(C), an order that denies a stay of the trial of any action pending arbitration is a final order that may be appealed.

plaintiff doctors. The similarly worded arbitration or alternative-dispute-resolution clause contained in each of the HMOs' contracts with the regional hospitals and medical practitioners stated that "any disputes arising out of or relating" to the provider agreement or "business relationship" had to be resolved through arbitration, mediation, or some form of alternative dispute resolution. The HMOs argue that the antitrust claims were within the scope of the arbitration provisions in the provider agreements. We disagree and thus affirm the judgment of the trial court.

{¶ 3} As this court has outlined before, "[t]he Ohio Supreme Court has adopted four rules, common to both state and federal courts, for reviewing decisions concerning a dispute's 'arbitrability': (1) that 'arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit'; (2) that the question whether a particular claim is arbitrable is one of law for the court to decide; (3) that when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) that when a 'contract contains an arbitration provision, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ' " [3]

{¶ 4} Here, the parties' dispute centers on whether the HMOs conspired and/or colluded to set reimbursement rates in this region that were lower than the "prevailing reimbursement rates in other comparable Ohio health care markets such as Dayton, Columbus and Cleveland." In determining whether this claim was within the scope of the arbitration agreements, "[a] proper method of analysis here is to ask [whether this] action could be maintained without reference to the [provider agreement] or [business] relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." [4]

{¶ 5} After reviewing the complaint and the remainder of the record, we conclude that the doctors' antitrust claim could be maintained without reference to their individual provider agreements. To maintain an antitrust claim pursuant to R.C. Chapter 1331, the doctors have to prove that two or more persons came together to illegally concentrate a particular business in the hands of a few for

---

**3.** *Cohen v. PaineWebber, Inc.* (Jan. 18, 2002), Hamilton App. No. C–010312, 2002 WL 63578, citing *Council of Smaller Ent. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 665–666, 687 N.E.2d 1352, citing *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648–650, 106 S.Ct. 1415, 89 L.Ed.2d 648, quoting *United Steelworkers v. Am. Mfg. Co.* (1960), 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403.

**4.** *Fazio v. Lehman Bros., Inc.* (C.A.6, 2003), 340 F.3d 386, 395, citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.* (C.A.5, 1998), 141 F.3d 243, 250–251.

the purpose of controlling prices and that injury resulted from that restraint of trade.[5] The express elements of an antitrust claim do not depend, as a matter of law, on the provider agreements between the individual doctors and HMOs.

{¶ 6} The doctors' allegations in their complaint (1) that the HMOs conspired and/or colluded with one another to illegally lower and fix the reimbursement rates for medical procedures to medical practitioners in the region; (2) that this anticompetitive behavior caused a decline in the number of doctors willing to practice medicine here, which resulted in the number of hospitals and hospital beds available for patient care dropping by nearly 50 percent and a decline in the quality of health care available for the consumer; and (3) that the HMOs' anticompetitive behavior precipitated a drop in physicians' salaries in the area neither relied on nor referred to a contract or a provider agreement between the doctors and the HMOs. Instead, the antitrust claim was based upon a statutory remedy the legislature has provided to persons harmed by illegal price fixing. The allegations that the HMOs, which controlled a majority of the health-care market in this region, colluded to fix reimbursement rates to medical practitioners arose out of actions that occurred prior to the existence of the underlying provider agreements or business relationships between the doctors and HMOs. The allegations did not even presume the existence of an underlying provider agreement.

{¶ 7} Because the doctors' cause of action could be maintained without reference to the individual provider agreements, we hold that the antitrust claims were not subject to the arbitration provision in the provider agreements. Accordingly, the trial court did not err in refusing to compel arbitration. Pursuant to this holding, the issue of whether the trial court erred in failing to stay the proceedings is now moot. The HMOs' assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

SUNDERMANN, P.J., HILDEBRANDT and WINKLER, JJ., concur.

---

5. See *Schweizer v. Riverside Methodist Hosp.* (1996), 108 Ohio App.3d 539, 543, 671 N.E.2d 312.